UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN C. AYERS,

                 Plaintiff,                               Case No. 13-10765
                                                 Honorable Thomas L. Ludington

v.

MULTIBAND FIELD SERVICES, INC.,

                 Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS AND DIRECTING SUPPLEMENTAL BRIEFING**

      John Ayers claims that Multiband Field Services, Inc. discriminated against him, and others like him, because of their weight. Multiband did not hire Ayers, at least in part, because he weighs more than 250 pounds. In response, Ayers filed a complaint alleging that Multiband's hiring policy—excluding from consideration individuals above 250 pounds—constitutes unlawful disparate treatment. Six months later, Ayers amended the complaint and added a second claim: alleging that even if Multiband did not discriminate intentionally, its hiring practice has a disparate impact on those that weigh more than 250 pounds. Because Multiband's policy expressly discriminates against prospective employees who weigh more than 250 pounds, it does have a disparate impact on those applicants. But that does not mean Ayers has a colorable disparate-impact claim. Multiband's motion to dismiss the claim will be granted.

**I**

      Multiband is primarily in the business of installing satellite dishes. To that end, it employs Field Service Technicians (FSTs), who are allegedly required to climb ladders in order to install dishes on the roofs of homes and other buildings. According to Multiband, FSTs utilize

heavy-duty, industrial ladders with "a maximum load capacity of 300 pounds."  Def.'s Mot. 1 n.1, ECF No. 14.  Because FSTs carry tools and equipment while they scale ladders, Multiband requires that all FSTs weigh less than 250 pounds.

Ayers "is an individual that is over 250 pounds."  Pl.'s Am. Compl. ¶ 3, ECF No. 10.  On September 25, 2012, he called Multiband to seek employment.[1]  Ayers alleges that "[a]fter giving his relevant information, he was asked if he weighed more than 250 pounds.  He responded that he did.  At which point, the Defendant's agent told him he was not eligible for hire and hung up."  *Id*. at ¶¶ 12–13.  According to Ayers, as of January 2, 2013, Multiband's "job posting continued to require that individuals weigh less than 250 pounds."  *Id*. at ¶ 14.

As one might surmise, Ayers was not hired because of his weight.  So he filed a complaint in Michigan's Midland County Circuit Court, alleging that Multiband's hiring policy violates the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq*.  Notably, Ayers filed his suit "as a class action under MCR 3.501 on behalf of himself and other individuals similarly situated."  Pl.'s Compl. ¶ 8, *attached as* Def.'s Notice Removal Ex. 1, ECF No. 1.  Multiband removed the case on February 22, 2013, asserting that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. 1332(a) (diversity jurisdiction).

On June 19, 2013, Ayers filed an amended complaint.  Although no new parties were added, Ayers submitted a second claim: violation of the Elliot-Larsen Act "for Disparate Impact."  Pl.'s Am. Compl. ¶¶ 25–29.  Thus, his amended complaint asserts two distinct claims—violations of Elliot-Larsen due to disparate treatment and disparate impact.

---

[1] In his complaint, Ayers does not indicate precisely which job position he applied for.  However, Multiband noted this discrepancy and, for purposes of its motion, assumed that Ayers "was inquiring about the FST position."  Def.'s Mot. 2 n.2.  In his response, Ayers does not indicate to the contrary.  Accordingly, for purposes of ruling on Multiband's motion to dismiss, the Court will also assume Ayers sought an FST position.

On July 9, 2013, Multiband filed a motion to dismiss Count II of Ayers's amended complaint (that for disparate impact), alleging that it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). As relief, Multiband requests this Court "grant its Motion to Dismiss Count II of Plaintiff's Amended Complaint, enter an order dismissing Count II with prejudice, and award Defendant its costs, interest, and attorney fees."

## II

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Generally, a Rule 12(b)(6) motion to dismiss should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (emphasis in original) (quoting *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)).

Additionally, because jurisdiction in this case is predicated upon diversity, Michigan law applies. As has long been established, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996).

**III**

Ayers alleges that Multiband's hiring policy—requiring all FSTs to weigh less than 250 pounds—constitutes not only actionable disparate treatment, but also produces a separately actionable claim because of its disparate impact on the employees over 250 pounds.  Multiband argues that Ayers's disparate-impact claim fails as a matter of law, and therefore should be dismissed, because he "does not allege a facially neutral policy or practice" that produces the disparate impact.  Def.'s Mot. 7.  Multiband is correct.  Count II of Ayers's complaint will be dismissed with prejudice.  Further, because the disparate-impact claim is frivolous, counsel for Ayers will be ordered to reimburse Multiband's counsel the costs, expenses, and attorney's fees incurred in bringing the motion to dismiss.

**A**

Ayers presents two distinct arguments to support his contention that the disparate-impact claim should survive Multiband's motion to dismiss: (1) disparate-impact cases do not require a "facially neutral" policy;[2] and (2) even if a facially-neutral policy is required, Multiband's policy is just that.  Both arguments are without merit.

**1**

There is no need to tarry long with Ayers's first assertion.  He indicates that "[t]he phrase 'facially neutral' is not found in Michigan's Elliott-Larsen Civil Rights Act nor Title VII of the Federal Civil Rights Act of 1964."  Pl.'s Resp. 6.  He thus concludes that, although "the phrase is used in Michigan Court cases, it is not a dispositive requirement."  *Id.*

---

[2] Ayers raises a third argument, which is essentially the same as the first.  He claims he has met the "plausibility" standard elucidated by the Supreme Court because he has pled "(1) a particular employment practice, (2) disparate impact caused by the practice, and (3) a prohibited basis."  Pl.'s Resp. 3–4.  Notably, this argument presumes there is no facially-neutral requirement for disparate-impact claims.  Because the Court finds there is such a requirement, there is no need to address this argument.  The analysis disposing the first argument also disposes of the third.

The legal authority requiring a facially-neutral policy for a disparate-impact claim is, however, overwhelming; both under federal and Michigan law.  As the Supreme Court explained in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977), "[c]laims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices *that are facially neutral* in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  *Id.* at 335 n.15 (emphasis added).  That a claim for disparate impact requires a facially-neutral policy has been affirmed by the Supreme Court on multiple occasions since.  *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 239 (2005) (claims that stress "disparate impact" involve employment practices that are facially neutral); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (disparate-impact claims "involve employment practices that are facially neutral"); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (same); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 1002 (1988) (again, the same); *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713 n.1 (1983) ("We have consistently distinguished disparate treatment cases from cases involving facially neutral employment standards that have disparate impact"); *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 582 (1978) (Marshall, J., concurring in part) (An individual may allege "that he has been the victim of a facially neutral practice having a 'disparate impact'").

The conclusion is no different under Michigan law.  "The disparate impact discrimination theory evolved from Title VII of the Civil Rights Act and has been incorporated into the Michigan Civil Rights Act."  *Jones v. Pepsi-Cola Metro. Bottling Co., Inc.*, 871 F. Supp. 305, 308 n.4 (E.D. Mich. 1994) (citing *Squire v. Gen. Motors Corp.*, 436 N.W.2d 739, 741–42 (Mich. Ct. App. 1989)).  Thus, when "analyzing claims under Elliott-Larsen, Michigan courts apply

federal substantive law developed in Title VII cases." *Jones*, 871 F. Supp. at 308 n.4 (citing *Squire*, 436 N.W.2d at 741–42).

Michigan courts have accordingly followed the Supreme Court, and when addressing disparate-impact claims under Elliot-Larsen, they begin with the observation of facially-neutral policies. In *Smith v. Goodwill Indus. of W. Michigan, Inc.*, 622 N.W.2d 337 (Mich. Ct. App. 2000), the court indicated that "[a] claim of disparate impact involves employment practices *that are facially neutral in their treatment of different groups* but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* at 343 (emphasis added) (internal quotation marks and citation omitted); *see also Farmington Educ. Ass'n v. Farmington School Dist.*, 351 N.W.2d 242, 245 (Mich. Ct. App. 1984) (claims that stress "disparate impact" involve "facially neutral" employment practices).

In *Matheson v. Gen. Motors Corp.*, No. 213957, 2001 WL 889203 (Mich. Ct. App. Aug. 7, 2001), the Michigan Court of Appeals again established disparate-impact claims require facially-neutral policies:

> To survive summary disposition on his disparate impact claim . . . Matheson had to demonstrate that a question of fact existed regarding whether (1) he was a member of a protected class, and (2) whether the VTEP, *a facially neutral employment practice*, burdened this protected class of persons more harshly than others.

*Id.* at *8 (emphasis added). Ayers's claim that because the language "facially neutral" does not appear in the Elliot-Larson Act or in Title VII, and therefore is not a requirement, is inconsistent with forty years of binding jurisprudence. Indeed, time and again, the Supreme Court and Michigan courts have held that a disparate-impact claim requires a facially-neutral policy.

The focus on a facially-neutral policy is well-established; assuring a claim for discrimination even in situations where the discrimination is not expressly acknowledged. Noted

- 6 -

by the Supreme Court in *Watson*, in disparate-treatment cases, "the plaintiff is required to prove that a defendant had a discriminatory intent or motive." *Watson*, 487 U.S. at 986. But the Court has established that "a plaintiff need not necessarily prove intentional discrimination in order to establish that an employer has violated" an individual's rights. *Id*. Accordingly,

> facially neutral employment practices that have significant adverse effects on protected *groups* have been held to violate the Act without proof that the employer adopted those practices with a discriminatory intent. The factual issues and the character of the evidence are inevitably somewhat different when the plaintiff is exempted from the need to prove intentional discrimination.

*Id*. at 986–87 (emphasis in original) (collecting cases). When an employer's policy is expressly discriminatory, a plaintiff must establish that employer acted with the intent to discriminate. When a policy does not expressly discriminate, *i.e*., where it is "facially-neutral," a plaintiff may still demonstrate discrimination by establishing such a policy has a "disparate impact." So the disparate-impact theory was established specifically to prevent an employer from defending discriminatory practices "simply on the basis of their facial neutrality[.]" *Id*. at 988.

The case Ayers relies on to demonstrate that "policies with non neutral criteria could be used in a disparate impact analysis" offers no respite. In *Mich. Dept. of Civil Rights ex Rel Elaine Peterson v. Brighton Area Schools*, 431 N.W.2d 64 (Mich. App. Ct. 1984), the court indicated that the policy at issue involved "facially neutral language[.]" *Id*. at 70. Moreover, the court again affirmed the conclusion that a disparate-impact claim requires a facially-neutral policy: "Under the disparate impact theory, proof of a discriminatory motive is not required. Disparate impact involves employment practices *that are facially neutral in their treatment of different groups* but that, in fact, fall more harshly on one group than on another and cannot be justified by business necessity." *Id*. (emphasis added) (citation omitted). Accordingly, *Peterson* was not a case where a policy that was "not absolutely neutral" could be "treated as a facially

neutral policy." It was a case where a policy containing "facially neutral language" was treated as just that; a "facially neutral" policy.

Notably, Ayers acknowledges that the policy here is not neutral on its face: "the challenged policy contains a non neutral characteristic (the 250 pound minimum) related to the protected class[,]" Pl.'s Resp. 10, "[t]here is no question that the Defendant's policy is not absolutely neutral on the subject of weight as it specifies a weight within the policy[,]" *id*. at 9. A claim for disparate impact requires a facially-neutral policy, contrary to Ayers's argument, and he admits the policy here was not a neutral one. His argument is without merit.

**2**

With his second argument, Ayers switches gears. After arguing that the policy is not facially-neutral, in the very next section, he contends that "should the Court determine that the policy or practice must be neutral, the Plaintiff avers that the policy or practice is in fact neutral" because of its reference to a third party's safety criteria for the maximum load of a ladder. Pl.'s Resp. 12. Ayers explains as follows:

> The policy attempts to rely on safety regulations as its basis. Thus, the policy could easily be written as follows: "No individual may be hired whose weight exceeds the duty-load amount listed on the side of a ladder." This policy is facially neutral in the sense that Defendant now argues. However, the two policies are identical. The redrafted policy does not directly discriminate, but relies on the determination of another group of third party (the ladder manufacturer, OSHA, or ANSI) for the basis of making employment decisions. Thus, the policy has a disparate impact based on a protected classification, weight.

Pl.'s Resp. 12–13 (quotation marks added). Not surprisingly, Ayers does not advance any legal authority for the proposition that he may redraft a discriminatory policy so that it becomes facially-neutral in order to save a disparate-impact claim (assuming, for purposes of discussion, that Ayers's redrafted policy is actually a facially-neutral one).

- 8 -

Of course, this case does not involve any potential policy that Ayers can conjure.  It involves only the policy that Multiband employs to regulate its hiring practices.  As the Sixth Circuit made clear when analyzing a disparate-impact claim under Title VII, a plaintiff must "identify and challenge *a specific employment practice*, and then show an adverse effect[.]" *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 372 (6th Cir. 2007) (emphasis added) (brackets omitted).  Likewise, the Supreme Court in *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008), albeit while addressing a claim under the Age Discrimination in Employment Act of 1967,[3] indicated as follows:

> [A] plaintiff falls short by merely alleging a disparate impact, or "pointing to a generalized policy that leads to such an impact."  The plaintiff is obliged to do more: to "isolate and identify the *specific* employment practices that are allegedly responsible for any observed statistical disparities." . . . the requirement has bite: one sufficient reason for rejecting the employees' challenge was that they "had done little more than point out that the pay plan at issue was relatively less generous to older workers than to younger workers," and "had not identified any specific test, requirement, or practice within the pay plan that had an adverse impact on older workers." . . . Identifying a specific practice is not a trivial burden[.]

*Id*. at 100 (emphasis in original) (brackets and citations omitted).  Accordingly, the policy at issue here is the specific policy employed by Multiband: requiring FSTs to weigh less than 250 pounds.  Clearly, the policy is not facially-neutral.  Recasting it in alternative terms by referring to the maximum safety capacity of a necessary tool does not make it so, even if recasting the policy was permitted.  Ayers's argument—that he may ignore the specific policy and attempt to rewrite it in terms that render it facially-neutral based on the acceptance of a third party's safety standards—is without merit.  Count II of his amended complaint will be dismissed.

---

[3] Although the Court was assessing a claim under the ADEA, it once again relied upon its "prior reading of Title VII," *Meacham*, 554 U.S. at 100, and so this Court finds the reasoning of the case very persuasive, if not binding.

**B**

Now that it is established that Ayers's disparate-impact claim is without merit, whether sanctions are warranted due to his pleading and defending the claim is ripe for adjudication. The Court concludes that because Ayers's counsel should have known that the claim was frivolous, at least after Multiband filed its motion to dismiss if not before they filed an amended complaint, sanctions pursuant to 28 U.S.C. § 1927 are warranted. Counsel will be ordered to pay the costs, expenses, and fees Multiband's counsel incurred in bringing its motion to dismiss.

Title 28 U.S.C. § 1927 allows a court to award sanctions against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." The statute specifically provides that in such situations, a court may require an attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* A court may assess fees without finding bad faith, but there must be

> some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.

*Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (citing *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). In short, "§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence. Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2007) (citations omitted). The Sixth Circuit has construed "vexatiously multiplying proceedings," as used in § 1927, "to include conduct where 'an attorney knows or reasonably should know that a claim pursued is frivolous[.]' "

- 10 -

*Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).

Sanctions are warranted here under § 1927 because Ayers's counsel should have known that the disparate-impact claim was without merit. A facially-neutral policy is required for such a claim, and—demonstrated above—the authority for that proposition is compelling. Ayers's counsel did not produce a single case to the contrary, and yet heedlessly pursued the argument. Further, counsel admits the policy involved here is not facially-neutral, but then goes on to argue just the opposite. Such conduct, without doubt, needlessly multiplied these proceedings. Multiband incurred additional expenses in moving to dismiss the frivolous claim, and those expenses will be shouldered by Ayers's counsel personally.

At this point, however, the Court is not aware of what expenses Multiband's counsel actually incurred in bringing its motion to dismiss. Therefore, supplemental briefing on the issue is warranted. Multiband will file supplemental briefing, no longer than 5 pages (exclusive of exhibits), demonstrating the reasonable costs it incurred in bringing its motion. Ayers's counsel will have 5 pages to respond to the reasonableness of those fees.[4] The Court will then issue an order directing specifically what expenses Ayers's counsel is responsible for.

## IV

Accordingly, it is **ORDERED** that Multiband's motion to dismiss, ECF No. 14, is **GRANTED**.

It is further **ORDERED** that Count II of Ayers's amended complaint, ECF No. 10, is **DISMISSED** with prejudice.

---

[4] Notably, this briefing is *not* intended for any argument on whether fees are warranted. The Court concludes that they are. The briefing will concern only whether the fee award Multiband requests is a reasonable one.

It is further **ORDERED** that Multiband is **DIRECTED** to file supplemental briefing, no longer than 5 pages, indicating the reasonable expenses (including costs and attorney's fees) it incurred in bringing the motion to dismiss.  The briefing is due by **September 27, 2013**.

It is further **ORDERED** that Ayers is **DIRECTED** to respond with supplemental briefing, no longer than 5 pages, indicating whether the expenses Multiband seeks are reasonable.  The briefing is due by **October 4, 2013**.

Dated: September 18, 2013                                    s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 18, 2013.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS